IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT L. SMELCER,

Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant.

No. 6:15-cv-00838-HZ

OPINION & ORDER

Alan Stuart Graf
Alan Stuart Graf P.C.
208 Pine St.
Floyd, VA 24091

Attorney for Plaintiff

//

//

Billy J. Williams
United States Attorney, District of Oregon
Janice E. Hébert
Assistant United States Attorney
United States Attorney's Office
1000 S.W. Third Avenue, Ste. 600
Portland, OR 97201

Thomas M. Elsberry
Social Security Administration
SSA Office of General Counsel
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104

Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Robert Smelcer brings this action under the Social Security Act ("Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), for judicial review of the Commissioner of Social Security's final decision denying his application for disability insurance benefits ("DIB") under Title II of the Act. For the reasons stated, the Commissioner's decision is reversed and remanded for additional proceedings.

**BACKGROUND**

Smelcer applied for DIB in January, 2012, alleging an onset date of May 30, 2005. Tr. 21.[1] His claim was denied initially and upon reconsideration. Tr. 21. Smelcer appeared at a hearing before Administrative Law Judge ("ALJ") Ted Neiswanger in September of 2013. Tr. 38. Smelcer did not have an attorney; after the ALJ informed him of his right to hire a representative and offered to reschedule the hearing to give him time to do so, Smelcer declined

[1] Citations to "Tr." refer to pages of the administrative record transcript, filed here as Docket No. 14.

and chose to continue the hearing without one. Tr. 44–45. ALJ Neiswager then explained to Smelcer the purpose of the hearing and how he would evaluate Smelcer's testimony and medical evidence to determine if Smelcer was disabled. Tr. 45–47. Next, the ALJ gave a brief overview of the medical evidence in the file, such as where the files originated from and the time period they covered; the records primarily consisted of information from Mercy Medical Center from 2001 to 2005, and records from the Roseburg Veterans Administration ("VA") Medical Center from 2003 to 2013. Tr. 49–50. The ALJ asked if Smelcer believed those records were everything the ALJ needed to decide the case; Smelcer responded: "Yeah. Yep . . . I mean, close to it, yeah." Tr. 50. Smelcer then told the ALJ that his wife would be testifying on his behalf. Tr. 50–51.

The ALJ then proceeded to question Smelcer about his claim for benefits. Tr. 52. Smelcer testified that he completed high school and went to two or three technical schools post-graduation, mostly for certifications related to truck driving and operating heavy machinery. Tr. 53–54. Smelcer then talked about his prior work experience as a mechanic, heavy equipment operator, general utility person, and more. Tr. 54–60. Next, Smelcer testified about his back pain, which he said was caused primarily by several workplace accidents. Tr. 62–65. He also claimed to have problems with his right shoulder, Tr. 66–67, and hammertoes on his left foot, Tr. 69–74.

The testimony then moved to Smelcer's mental impairments, including depression. Tr. 75. Smelcer explained that he was seeing a personal therapist at Valley View Counseling. Tr. 76, 78. The ALJ noted that he did not have any information from Valley View in the record, and later noted that he would send out a request for the records. Tr. 78, 90. Smelcer testified that he was taking psychiatric medication, that he feared large crowds, and had trouble controlling his anger. Tr. 79–85.

Apart from describing his symptoms and impairments, Smelcer's testimony was notable for his pronounced difficulties with verbal expression. As just one example, Smelcer attempted to explain to the ALJ the psychiatric counseling he received at Valley View Counseling:

> Q: Okay, you've been getting some counselling?
> A: Yes.
> Q: Okay.
> A: And I've been doing that for --
> Q: Mm-hmm.
> A: You guys are --
> Q: A while. Okay.
> A: I don't know -- should have had something --
> Q: Yeah.
> A: -- on it that I've been going to -- and
> Q: That's right. They're at the Roseburg VA?
> A: Well, no.
> Q: Okay.
> A: No, this is a dang separate --
> Q: Okay, does the VA pay for you to go –
> A: personamal [phonetic] --
> Q: elsewhere, or how does that work?
> A: No.
> Q: No?
> A: No.
> Q: Okay.
> A: Well, no.
> Q: Okay.
> A: They have a one-day -- one-day-a-week --
> Q: Mm-hmm.
> A: -- schedule kind of --
> Q: Okay.
> A: -- just
> Q: Okay.
> A: -- dang thing.
> Q: Okay.
> A: There's been times that I'm so, you know –
> Q: Mm-hmm.
> A: -- wound up --
> Q: Mm-hmm.

A: -- because there's dang jobs that I --
Q: Mm-hmm.
A: -- am supposed to then try and --
Q: Mm-hmm.
A: -- you know -- try and then they fix --
Q: Mm-hmm.
A; -- and, you know, I'm just --
Q: What' s --
A: I don 't know. I can't –

Tr. 75–76. Smelcer's wife also testified at the hearing. Tr. 89–105. She spoke about his difficulties communicating, and told the ALJ that Smelcer had "a learning disability." Tr. 97.

ALJ Neiswager issued a decision on November 3, 2013, in which he found Smelcer was not disabled under the Act through December 31, 2010, the date Smelcer was last insured. Tr. 34. Smelcer then hired an attorney, who secured a substantial number of medical records that were not part of the record before ALJ Neiswanger. Tr. 9. Smelcer appealed and submitted the new evidence to the Appeals Council for consideration, but the Appeals Council denied his request for review, making ALJ Neiswanger's opinion the Commissioner's final decision that Smelcer now challenges in this Court. Tr. 1–7.

**SEQUENTIAL DISABILITY EVALUATION**

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). Each step is potentially dispositive. At step one, the presiding ALJ determines whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled; if not, the analysis continues. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the ALJ determines whether the claimant has

one or more severe impairments. If not, the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ determines whether the impairment meets or equals one of the impairments listed in the SSA regulations and deemed "so severe as to preclude substantial gainful activity." Bowen v. Yuckert, 482 U.S. 137, 141 (1987); 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis moves to step four. 20 C.F.R. §§ 404.1520(d), 416.920(d). At step four, the ALJ determines whether the claimant, despite any impairments, has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform his or her past relevant work, the analysis moves to step five where the ALJ determines whether the claimant is able to do any other work in the national economy considering the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g).

The burden to show disability rests with the claimant at steps one through four, but if the analysis reaches step five, the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant could perform. 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f); Tackett v. Apfel, 180 F.3d 1094, 1098–1100 (9th Cir. 1999). If the Commissioner demonstrates a significant number of jobs exist in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g).

**ALJ DECISION**

The ALJ found that Smelcer met the insurance status requirements of the Act through December 31, 2010. Tr. 23. At step one, the ALJ found Smelcer had not engaged in substantial gainful activity during the period from his alleged onset day of May 20, 2005 through his date last insured of December 31, 2010. Tr. 23. At step two, the ALJ found Smelcer had the following

severe impairments: "degenerative joint disease of the lumbosacral spine; degenerative joint disease of the right shoulder[;] hammertoes on the 2nd and 3rd toes of the left foot[;] and major depressive disorder." Tr. 23. At step three, the ALJ found that Smelcer's impairments or combination of impairments did not meet or equal the severity of any listed impairments. Tr. 24. Next, the ALJ found that Smecler had the following RFC through the date last insured:

> [T]he claimant had the residual functional capacity to perform light work . . . except the claimant can occasionally lift up to 20 pounds, frequently lift up to 10 pounds, stand for about 6 hours in an 8 hour day, and sit for about 6 hours in an 8 hour day. The claimant must avoid walking on uneven or sloped terrain due to his hammertoes status-post repair with limited range of motion, which affects his walking. The claimant can occasionally stoop, kneel, crouch, and crawl. The claimant is limited to occasional right overhead reaching secondary to degenerative joint disease of the right shoulder. The claimant cannot work in setting with crowds and cannot tolerate interactions with the general public. The claimant can tolerate structured, superficial interaction with coworkers.

Tr. 26. At step four, the ALJ found that Smelcer could not perform any past relevant work. Tr. 32. Next, the ALJ found that, since his alleged onset date of October 28, 2005, Cothrell has been unable to perform any past relevant work. Tr. 606. At step five, the ALJ found that through the date last insured, considering his age, education, work experience, and RFC, there were jobs in the national economy that Smelcer could perform, such as electronics worker, order filler, and small products assembler. Tr. 32–33. Accordingly, the ALJ found that Smelcer was not disabled from May 30, 2005, to December 31, 2010. Tr. 33.

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the decision. Andrews, 53 F.3d at 1039–40. A reviewing court must consider the entire record as a whole and cannot affirm the Commissioner by simply isolating a specific quantum of supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted).

**DISCUSSION**

Smelcer makes several arguments for why the Commissioner's decision should be reversed and his case be remanded for additional proceedings, but they all rely on one central issue: the discovery of nearly seven hundred pages of medical evidence that Smelcer asserts were not part of the record before the ALJ. After ALJ Neiswanger issued his decision denying Smelcer's claim in November of 2013, Smelcer hired an attorney who discovered the following records and submitted them to the Appeals Council as part of Smelcer's administrative appeal:

1. Mental Health Triage, April 27, 2000, through November 6, 2002;
2. Roseburg HCS, September 2003, through August 2004;
3. Department of Veterans Affairs, February 2, 2003, through August 24, 2004;
4. Department of Veterans Affairs, June 12, 2000, through March 13, 2006;
5. Department of Veterans Affairs, July 2, 1979, through July 25, 2007.

Pl. Brief at 5; Tr. 6. The Appeals Counsel considered these additional exhibits but declined to review the ALJ's decision. Tr. 1–7.

Smelcer now argues that these new records render the ALJ's denial of Smelcer's claim no longer supported by substantial evidence, and asks that the Court remand his case for further proceedings so the Commissioner can consider Smelcer's claim with the benefit of the full record. Smelcer raises the following specific challenges to the ALJ's decision:

1. The lack of a complete record materially affected the ALJ's [RFC] finding;
2. The lack of a complete record affected the ALJ's duty to fully consider the Veterans Administration's disability findings; and
3. The lack of a complete record affected the ALJ's credibility determinations.

Pl. Brief at 1–2 (some capitalization altered). Each is addressed below.

1. RFC

Smelcer argues that the "lack of a complete record materially affected the ALJ's residual functional capacity finding." Pl. Brief at 7 (some capitalization omitted). A claimant's RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," meaning eight hours a day, five days a week, or equivalent. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is the most a person can do in spite of limitations or restrictions. Id. "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." Id.; see also Gehring v. Colvin, No. 2:14-CV-01830-KI, 2016 WL 155046, at *4 (D. Or. Jan. 13, 2016).

As set out above, the ALJ assessed the following RFC for Smelcer:

> [T]he claimant had the residual functional capacity to perform light work . . . except the claimant can occasionally lift up to 20 pounds, frequently lift up to 10 pounds, stand for about 6 hours in an 8 hour day, and sit for about 6 hours in an 8 hour day. The claimant must avoid walking on uneven or sloped terrain due to his hammertoes status-post repair with limited range of motion, which affects his walking. The claimant can occasionally stoop, kneel, crouch, and crawl. The claimant is limited to occasional right overhead reaching secondary to degenerative joint disease of the right shoulder. The claimant cannot work in setting with crowds and cannot tolerate interactions with the general public. The claimant can tolerate structured, superficial interaction with coworkers.

Tr. 26.

Smelcer asserts that the ALJ erred by not including in his RFC any limitations accounting for Smelcer's difficulty concentrating or his speech impairment, problems that, Smelcer claims, were well-documented in his recently discovered records. Pl. Brief at 9. Smelcer identifies four purportedly new documents that undermine the ALJ's RFC determination:

- a 2003 report from Dr. Finey which noted Smelcer's difficulties communicating;
- a 2005 Veteran's Disability examination report with notes from Drs. Jason Quiring and Rex Turner about Smelcer's speech and memory impairment, and severe depression that was "unlikely" to improve;
- a 2006 VA Disability Rating decision that noted Smelcer's significant speech impairment; and
- a 2010 report from Ginger Terry, M.A., which noted Smelcer "has some wordfinding or speech difficulty at times, but is able to articulate if he slows down."

Pl. Brief at 7–8.

The Commissioner correctly notes that the ALJ did, in fact, consider the 2005 VA report and the 2010 report from Ginger Terry. Def. Resp. at 8–9. However, the ALJ did not consider the 2003 report from Dr. Finey or the 2006 VA Disability Rating. Both of those documents reflect Smelcer's speech impairment. Tr. 1262; Tr.1423. Dr. Finey reported that Smelcer's memory was "moderately impaired" and his concentration was "quite impaired," and that his performance on tests "suggests major difficulty with mental tasks requiring significant concentration." Tr. 1261. The 2006 VA report noted Smelcer's depression caused him "moderate social and industrial impairment," and that his "memory was impaired." Tr. 1423.

The Commissioner argues that Dr. Finey's report is too far outside the relevant period to impact the ALJ's analysis. Def. Brief at 7. However, the 2003 report from Dr. Finey only predates the alleged onset date by about fifteen months and it is consistent with the medical evidence from the period in question. Social Security regulations state that the Agency "will

assess [a claimant's] residual functional capacity based on all of the relevant medical and other evidence" in the record. 20 C.F.R. § 416.945(a)(3). The Agency's assessment of mental impairments involves a "complex and highly individualized process that requires [the Agency] to consider multiple issues and all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation," including "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment." 20 C.F.R. § 404.1520a(c)(1); see also Kimmins v. Colvin, No. 12-CV-4206-YGR, 2013 WL 5513179, at *7 (N.D. Cal. Oct. 4, 2013). Had Dr. Finey's report been part of the record before the ALJ, the ALJ would have been required to consider it as part of a longitudinal analysis of Smelcer's impairments, and thus the Court finds it appropriate to remand to the ALJ for such a consideration. Watkins v. Comm'r, Soc. Sec. Admin., No. 3:14-CV-01753-HZ, 2016 WL 184425, at *3 (D. Or. Jan. 15, 2016).

Even without the newly discovered evidence of Smelcer's difficulty communicating, the ALJ's formulation of Smelcer's RFC without accounting for Smelcer's speech limitations is not supported by substantial evidence. The medical records before the ALJ consistently reflected that he had difficulty with verbal communication. E.g. Tr. 710 (a 2005 report from VA psychologist Dr. Quiring noting that "[c]ommunication was impaired due to [Smelcer's] pronounced expressive deficits"). The severity of Smelcer's impairment was borne out at the hearing before the ALJ, when Smelcer had such profound difficulties explaining his work history and limitations that the ALJ was forced to complete Smelcer's sentences for a substantial number of the questions posed. The ALJ did not provide any specific reason for not including a speech-related limitation in Smelcer's RFC. The Commissioner points to the ALJ's passing reference to

a chart note from 2010 in which Ms. Terry noted Smelcer's difficulty communicating, but also that the condition had "improved in adulthood after learning to calm down." Tr. 491. But that is merely a post-hoc rationalization that the Court cannot rely on in affirming the ALJ's formulation of Smelcer's RFC. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ-not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

Moreover, the ALJ's isolation of a single mention of "improvement" from Ms. Terry, a registered dietician, is not sufficient to overlook Smelcer's obvious communicative difficulties. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (explaining that it is impermissible for ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (ALJ may not reach a conclusion and justify it by ignoring competent evidence in the record that would suggest an opposite result). The newly discovered records offer further support for the conclusion that the ALJ's failure to include communicative limitations in Smelcer's RFC was an error. See, e.g., Tr. 1101 (2002 record from the VA reflecting that Smelcer "has a speech impediment[,]a stammer, which he has had sin[c]e childhood.").

2. VA Disability Findings

Smelcer next argues that the newly discovered records undermine the ALJ's reasoning for rejecting a Veteran's Administration disability rating. Pl. Brief at 10. In analyzing Smelcer's RFC, the ALJ noted that a 2003 medical record from the VA which reflected Smecler had been assessed a combined 70 percent disability rating, including a 30 percent rating for his major depressive disorder. Tr. 30, 573. The ALJ wrote that "[i]mportantly, there is no assessment of

[Smelcer's] functional abilities by the Veterans Administration showing greater permanent limitation during the period at issue . . . ." Tr. 30. Therefore, the ALJ did not give significant weight to the VA's disability rating.

One of the newly discovered records is another VA disability rating from 2006 which also assessed Smelcer's major depressive disorder as 30 percent disabling. Tr. 1422. Importantly, this VA rating included a narrative explaining the rating which described Smelcer as having "moderate social and industrial impairment due to your depression." Tr. 1423. "You are currently employed," the report noted, "but your employment has been compromised due to your depression." Tr. 1423. "You were not disoriented, but memory was impaired. You displayed difficulty in articulating your words due to your depression." Tr. 1423.

This newly discovered report directly undermines the ALJ's reason for discounting the VA disability rating, specifically that the VA did not provide an "assessment of [Smelcer's] functional abilities," and thus the Court again finds it necessary to remand the case to the ALJ to consider this (and other) new evidence. The Commissioner offers a post-hoc rationalization for why the 2006 VA rating would not lead to a different result in Smelcer's case, but again, the Court cannot affirm the ALJ's decision on grounds the ALJ did not rely on. See Def. Brief at 10; Bray, 554 F.3d at 1224.

3. Credibility

Finally, Smelcer argues that the newly discovered records undermine the ALJ's analysis of his credibility. An ALJ analyzes the credibility of a claimant's testimony regarding his subjective pain and other symptoms in two steps. Lingenfelter v. Astrue, 504 F.3d 1028, 1035–36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce

the pain or other symptoms alleged." Id. at 1036 (citation and internal quotation omitted). "The claimant, however, need not show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." Id. (citation and internal quotation omitted). Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject his testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. Id. (citation and internal quotation omitted).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen v. Chater, 80 F.3d 1273, 1283 (9th Cir. 1996). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements by the claimant. Id.

At step one, the ALJ found that Smelcer's "medically determinable impairments could reasonably be expected to cause some degree of the alleged symptoms[.]" Tr. 27. The ALJ found at step two, however, that Smecler's statements about the intensity, persistence, and limiting of effects of his symptoms were not entirely credible. Tr. 27. The ALJ discounted Smelcer's credibility in part because "[t]he medical evidence of record does not support [Smelcer's] allegedly debilitating impairments and associated limitations," particularly because the records from the relevant period "generally reflect a good response to treatment." Tr. 27. The ALJ also wrote that "[Smelcer] and his wife appeared to be sincere witnesses regarding [his] struggles with back and mental issues, [but] the record demonstrates inconsistencies with their testimony as it pertains to the timeline of events," because the medical records showed that many of

Smelcer's impairments worsened in 2012, which was outside the relevant period (May 2005 to December 2010). Tr. 29–30.

The ALJ's reliance on "inconsistencies" in the "timeline of events" between testimony from Smelcer and the medical records is not a clear and convincing reason for discounting his testimony. The ALJ never told Smelcer, who was not represented at the hearing, to limit his testimony to his conditions as they existed during the relevant time period. The ALJ simply asked Smecler to describe his work history and the problems caused by his impairments, which Smelcer did to the best of his ability. The ALJ cannot fairly find Smelcer not fully credible for answering the questions the ALJ posed if the questions themselves did not seek to illicit the information the ALJ needed to decide Smelcer's case. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) ("The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered.") (quotation omitted) (emphasis added). The ALJ's responsibility in this case was heightened because Smelcer was both unrepresented and suffered from a mental impairment that severely impacted his ability to communicate. Id.; see also Celaya v. Baiter, 332 F.3d 1177, 1183 (9th Cir. 2003). Had the ALJ wanted Smelcer to cabin his testimony to only the relevant period, the ALJ should have, at the very least, explained to Smelcer the period that was under review, and asked Smelcer to limit his testimony in such a way.

Although the Court finds that the ALJ's summary of the medical evidence is generally accurate, any inconsistency between the objective medical evidence and Smelcer's testimony is not, standing alone, a clear and convincing reason for finding Smelcer less than fully credible. See Jones v. Comm'r of Soc. Sec., No. 2:13-CV-01622-HZ, 2014 WL 5682894, at *3 (D. Or. Oct. 31, 2014) ("The ALJ may not, however, make a negative credibility finding solely because

the claimant's symptom testimony is not substantiated affirmatively by objective medical evidence.") (citing Robbins, 466 F.3d at 883) (additional citation omitted). Accordingly, the ALJ must, on remand, conduct anew an analysis of Smelcer's credibility.

**CONCLUSION**

The Commissioner's decision is reversed and remanded for additional proceedings.

IT IS SO ORDERED.

Dated this 6 day of July, 2016.

MARCO A. HERNÁNDEZ
United States District Judge